IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Randy Fink, | ) | Case No. 8:12-cv-02221-RMG-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Warden[1] FCI Williamsburg, Chief | ) | |
| Executive Officer, CEO, Federal | ) | |
| Correctional Institute, Williamsburg, SC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on a motion to dismiss or, in the alternative, for summary judgment filed by Defendant [Doc. 26], a motion for declaratory judgment filed by Plaintiff [Doc. 30], a motion for preliminary injunction filed by Plaintiff [Doc. 43], a motion to expedite ruling filed by Plaintiff [Doc. 57], a motion for authenticity validation check filed by Plaintiff [Doc. 58], and a motion to amend/correct the motion for preliminary injunction filed by Plaintiff [Doc. 66]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in pro se cases and to submit findings and recommendations to the District Court.

_____

[1]Defendant alleges that Timothy Johnson, Associate Warden of Programs at FCI Williamsburg, was Acting Warden during the majority of the time frame alleged in the Complaint. [Doc. 26 at 2.]

## PROCEDURAL HISTORY

Plaintiff, proceeding pro se, filed this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), on July 31, 2012.[2] [Doc. 1.]  In his original filing, which Plaintiff referred to as a habeas petition pursuant to 28 U.S.C. § 2241, Plaintiff primarily complained of a refusal to provide medical care and allegedly medically necessary accommodations and sought injunctive relief and declaratory judgments.  [*Id.*]  Accordingly, although Plaintiff considered his pleading to be a habeas petition, he was in fact attempting to litigate a civil case addressing prison conditions.[3] Therefore, the Court ordered Plaintiff to complete a complaint form to be filed as an attachment to the original filing.  [Doc. 8 at 2.]

Before complying with the Court's order to bring the case in proper form, Plaintiff filed a supplement to his original filing, clarifying the injunctive and declaratory relief he sought.  [Doc. 11.]  Thereafter, Plaintiff completed a complaint form and submitted a second supplement.  [Docs. 1-5, 1-6.]  Plaintiff later amended his complaint to withdraw "injunctive relief four" from this case.  [Doc. 1-15.]  On September 27, 2012, the case was in proper form, and the Court authorized service of process and construed this action as one filed pursuant to *Bivens.*  [Doc. 17.]  On December 7, 2012, Plaintiff filed another supplement to his complaint, seeking to have his legal materials forwarded from FCI Coleman Low to FCI Williamsburg.  [Doc. 24.]  On December 17, 2012, Plaintiff filed

---

[2]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on July 31, 2012.  [Doc. 1 (complaint signed by Plaintiff on July 31, 2012); Doc. 1-4 (envelope postmarked August 2, 2012).]

[3]Thus, the Court has construed this action as one filed pursuant to *Bivens.*.  [*See* Doc. 17 at 1, n.1.]

2

another supplement, seeking "alternate means of obtaining federal law references he may need in the process of litigating this case" [Doc. 25 at 6], arguing he cannot use the prison computer system because "the electromagnetic fields that the prison computer system [releases] cause side effects and symptom problems for Mr. Fink" [*id.* at 4 (brackets in original)].

On December 18, 2012, Defendant filed a motion to dismiss or, in the alternative, for summary judgment. [Doc. 26.] On the same day, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 27.] In response, Plaintiff first filed what he captioned a "Judicial Notice Rule 201(d), Federal Rules of Evidence" and a "Motion for Exigent Ruling on Declaratory Judgements One and Two" [Docs. 29, 30] and later filed a response in opposition on February 22, 2013 [Doc. 45]. Defendant filed a response in opposition to Plaintiff's motion on January 28, 2013 [Doc. 32], and Plaintiff filed a reply on February 21, 2013 [Doc. 44]. On February 21, 2013, Plaintiff also filed a motion for preliminary injunction and for summary judgment. [Doc. 43.] Defendant filed a response in opposition on March 8, 2013 [Doc. 50], and Plaintiff filed a reply on May 17, 2013 [Doc. 64]. On April 15, 2013, Plaintiff filed what he captioned a "Motion to Expedite Ruling on Motion for Summary Judgement on Injunctive Relief Five, or in the Alternate Motion to Supplement Emergency Motion for Preliminary Injunction" and a "Motion for Authenticity Validation Check of Undersigniture of Supporting Document of Marshall Prince's Response to Emergency Motion . . . ." [Docs. 57, 58.] Defendant failed to respond to these motions. On May 23, 2013, Plaintiff filed a motion to supplement his injunctive relief requests. [Doc.

3

66.]  Defendant filed a response in opposition to this motion on June 10, 2013.  [Doc. 67.]

Accordingly, all motions are ripe for review.

## BACKGROUND

Plaintiff alleges he suffers from a condition called paruresis,[4] which necessitates a

private cell.  [Doc. 1 at 3.]  Plaintiff asserts he was diagnosed with this condition in 1988

by the Chief Medical Officer at a federal prison camp at Elbin Air Force Base and that

these records were "covered-up by prison officials for a decade."[5]  [*Id.* at 3–4.]  Plaintiff

alleges he uncovered the 1988 medical records through a Freedom of Information Act

request in 2006.  [*Id.* at 4.]  Plaintiff also contends he was under a court-ordered

commitment pursuant to 18 U.S.C. § 4245 because he was a prisoner suffering from a

mental disease while in prison.[6]  [*Id.* at 4.]

Plaintiff further alleges he was informed by a forensic psychologist and forensic

psychiatrist that a medically necessary single cell prescription was in Plaintiff's medical

records, and the doctors assured Plaintiff he would be placed in a single cell in a general

population prison.  [*Id.* at 5–6.]  However, he was later advised of complications with

providing a single cell in a general population prison.  [*Id.* at 6.]  The forensic psychologist

then retired and a new § 4245 treating team adopted the prescription for single cell

placement.  [*Id.*]

---

[4]Paruresis is "a type of phobia in which the sufferer is unable to urinate in the (real or imaginary) presence of others, such as in a public restroom."  Wikipedia, http://en.wikipedia.org/wiki/Paruresis (last visited June 13, 2013).

[5]Plaintiff alleges that, while these medical records were covered up, Plaintiff was wrongfully diagnosed with an inability to function in an open unit.  [Doc. 1 at 13.]

[6]Plaintiff further alleges he has never been discharged from the court-ordered commitment pursuant to § 4245 and that § 4245 prohibits Plaintiff from being in a general population prison.  [Doc. 1 at 25–26.]

4

On November 6, 2007, Plaintiff was transferred to Federal Medical Center Devens, and the prescription for single cell placement was adopted. [*Id.* at 7.] Subsequently, Plaintiff was unlawfully transferred to a general population, arriving at Coleman Correctional Complex Medium on March 28, 2011. [*Id.* at 8.] Plaintiff alleges that, after three months of "adversarial encounters," Plaintiff was transferred to Coleman Low for dormitory housing with common bathrooms including toilet stalls. [*Id.* at 9.]

On June 19, 2012, Plaintiff was transferred to a medium institution, arriving at FCI Williamsburg on June 29, 2012. [*Id.* at 9–10.] Plaintiff contends his transfer was an unjust disciplinary transfer based on four unjust incident reports against Plaintiff, one of which was for his inability to cell with another inmate in the segregation unit ("SHU"). [*Id.* at 9.] Plaintiff claims he advised officials at FCI Williamsburg of his prescription and need for a single cell assignment, but he was placed in SHU and forced to share a cell with another inmate. [*Id.* at 10.] Plaintiff refused to enter the cell and was placed in a holding cell alone, then placed in a strip down cell and a hardcell. [*Id.* at 11–12.] Plaintiff alleges an unjust incident report was served on him on June 30, 2012 for his inability to cell with another prisoner. [*Id.* at 12.] Plaintiff further alleges he wanted to respond in writing to the incident report but was denied writing utensils. [*Id.* at 15–17.] On July 5, 2012, Plaintiff was placed in a standard segregation cell alone and remained unjustly in segregation. [*Id.* at 12.]

Plaintiff seeks declaratory judgments and injunctive relief. [Docs. 1, 11.] More specifically, Plaintiff seeks declarations that:

1.    Plaintiff's medical records reflect that a single cell in general population is a medical necessity;

2.    The need Plaintiff has for the medically necessary single cell in general population is a current and controlling compounded prescription;

3.    The purpose of Plaintiff's transfer from Coleman Medium to Coleman Low was the equivalent of providing Plaintiff with and to implement the prescription for the medically necessary single cell in a general population;

4.    Plaintiff is not discharged from the § 4245 court-ordered psychiatric commitment;

5.    The statutory requirements of § 4245 prohibit Plaintiff from being transferred to and housed in a general population prison; and

6.    Pursuant to Plaintiff's § 4245 court-ordered psychiatric commitment, his care level is four.

[Doc. 11.]  Moreover, Plaintiff seeks the following injunctive relief, which he refers to as Injunctive Reliefs One through Six:

1.    A court order to compel the CEO of FCI Williamsburg to cease and desist interfering with the current and controlling compounded prescription for the medically necessary single cell in general population;

2.    A court order to compel the CEO of FCI Williamsburg to cease and desist issuing unjust incident reports against Plaintiff derived from and for his inability to cell with another prisoner in general population or otherwise in SHU;

3.    A court order for restoration of his procedural and substantive due process protected interests and his First Amendment right to be heard in a written statement/counter-response to the unjust incident report dated June 29, 2012;

4.    A court order to compel the supervisory powers of the BOP/FCI Williamsburg to transfer Plaintiff back to Coleman Low to restore Plaintiff's procedural and

substantive due process protected interests to litigate the § 2241 action in the Middle District of Florida[7];

5.  In the alternative, a court order to compel the supervisory powers of the BOP/FCI Williamsburg to comply with 1) the § 4245 court-ordered care level four psychiatric commitment, 2) the statutory due process requirements of § 4245 discharge proceedings, and 3) Plaintiff's procedural and substantive due process protected interests to proceed with the § 4245 discharge proceedings to transfer Plaintiff back to a level four psychiatric hospital;

6.  A court order to prevent/stop the CEO of FCI Williamsburg from unjustly transferring Plaintiff to another general population prison until justified and determined by this Court.[8]

[*Id.*]

## **APPLICABLE LAW**

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard

---

[7]As previously noted, Plaintiff amended his complaint to withdraw "injunctive relief four" from this case. [Doc. 1-15.]

[8]Although, in his completed complaint form, Plaintiff references injunctive reliefs seven and eight as forthcoming [Doc. 1-5 at 8] and references injunctive reliefs seven and eight in other filings [*see, e.g.*, Doc. 30 at 3–4 (noting the supporting facts as to injunctive reliefs seven and eight have yet to be developed and filed with the Court); Doc. 45 at 8 (noting "the facts set forth in this third possibility for Marshall Prince's bad faith pleading is injunctive relief eight in this case")], the Court has been unable to determine what specific injunctive relief Plaintiff seeks in injunctive reliefs seven and eight.

than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under *Bivens***

In *Bivens*, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of *federal* constitutional rights. 403 U.S. at 389. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983[9]; federal officials cannot be sued under § 1983, however, because they do not act under color of *state* law. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Mitchell v. Forsyth*, 511 U.S. 511, 530 (1985); *Turner v. Dammon*, 848 F.2d 440, 443–44 (4th Cir. 1988). To establish a claim under *Bivens*, a plaintiff must prove two elements: (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States and (2) the defendant did so under color of federal law. *See Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted) (setting forth requirements for a § 1983 claim under color

---

[9]Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.

8

of state law); *see also Bivens*, 403 U.S. at 389 ("In [a previous case], we reserved the question whether violation of [the Constitution] by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct.  Today we hold that it does.")

**Motion to Dismiss Standard**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support [his] claim and would entitle [him] to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  In addition to the complaint, the court "may consider documents attached to the complaint . . . so long as they are integral to the complaint and authentic." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir 2007) (citing Fed. R. Civ. P. 10(c)).

With respect to well-pleaded allegations, the Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

9

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

11

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Exhaustion of Administrative Remedies**

Defendant contends he is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies before filing this action.[10]  [Doc. 26 at 7–11.]  Plaintiff argues that exhaustion will cause irreparable harm and would be futile.  [*See, e.g.*, Docs. 1, 45.]

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until* such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).  As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  In other instances, the internal review might filter out some frivolous claims.  And for cases ultimately brought to court, adjudication could be facilitated by

---

[10]Because Defendant presented to the Court matters outside the pleadings in his motion to dismiss/for summary judgment [*see* Docs. 26-1, 26-2], which the Court did not exclude, and because Plaintiff received notice of the summary judgment procedure [Doc. 27] and had an opportunity to respond to the motion and the additional matters submitted with it [*see* Doc. 45], the Court has treated Defendant's motion to dismiss or, alternatively, for summary judgment as a motion for summary judgment, *see* Fed. R. Civ. P. 12(d).

12

an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[11]  *Id.* at 524, 532.  The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983."  *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process).  *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad").

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint.  *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*,

---

[11] The Supreme Court also explicitly stated that "federal prisoners suing under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."  *Porter*, 534 U.S. at 524.

407 F.3d 674, 681 (4th Cir. 2005).  However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust.  *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

The Federal Bureau of Prisons ("BOP") has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to his confinement.  The BOP's Administrative Remedy Program is generally a four-step grievance procedure.  Usually, an inmate is required first to attempt to informally resolve his complaints with staff.  28 C.F.R. § 542.13.  Then the inmate may submit a formal Administrative Remedy Request ("Request") to the warden; the inmate must attempt informal resolution and submit the Request within twenty calendar days of the event giving rise to his complaint.  *Id.* § 542.14(a),(c)(4).  An inmate who is not satisfied with the warden's response to the Request may appeal the decision within twenty days to the Regional Director.  *Id.* § 542.15(a).  The inmate may appeal the Regional Director's decision within thirty days to the General Counsel.  *Id.*  The administrative

14

process is exhausted when the General Counsel issues a ruling on the inmate's final appeal. *Id.* ("Appeal to the General Counsel is the final administrative appeal.").

Additionally, the BOP has set out when a Request or an appeal is considered filed and when an inmate should expect a response from the appropriate official:

> If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing.

*Id.* § 542.18. The inmate may consider the absence of a response within the allotted response time, including any extension, to be a denial of the Request or appeal at that level. *Id.* Thus, an inmate has exhausted a given level of the grievance process, and may proceed to the next level, if he does not receive a response at that level within the allotted response time. However, as stated, the inmate must appeal his grievance to the General Counsel to completely exhaust his administrative remedies.

Here, Plaintiff failed to complete every step of the BOP's Administrative Remedy Program prior to filing this action, and therefore, this action is barred for Plaintiff's failure to exhaust. The record reflects that, although Plaintiff has submitted 131 administrative remedy filings during his time in BOP custody, he has failed to exhaust any issue raised in this suit. [Doc. 26-2 at 3 ¶ 7, 5–17.] Additionally, Plaintiff failed to file any administrative

remedies after he arrived at FCI Williamsburg in June 2012. [*Id.* at 3 ¶ 8.] Plaintiff admits he had not exhausted his administrative remedies at the time he filed this case[12] but contends he should be excused from exhausting administrative remedies because exhaustion of administrative remedies would cause irreparable harm and exhaustion of administrative remedies is futile in this case.[13] [*See generally*, Docs. 1, 45.] However, the United States Supreme Court has refused to "read futility or other exceptions" into the § 1997e(a) exhaustion requirement. *Booth*, 532 U.S. at 741 n.6. Accordingly, the Court concludes Plaintiff has failed to demonstrate he exhausted his administrative remedies, and the Court recommends Defendant's motion for summary judgment be granted.[14]

**Remaining Motions**

As the Court recommends Defendant's motion for summary judgment be granted because Plaintiff failed to exhaust administrative remedies before filing this case, the Court further recommends all remaining motions be found as moot.

---

[12] Plaintiff appears to argue he completed the exhaustion requirements with respect to injunctive relief five during the pendency of this case [*see* Docs. 43 at 5 ("As of November 19th, 2012, exhaustion of administrative remedies for injunctive relief five is completed . . . ."), 43-1]; however, the exhaustion requirement requires that all available administrative remedies be exhausted *before* the commencement of the litigation, *see* § 1997d(a).

[13] Although in both his original filing and his response in opposition to the motion for summary judgment, Plaintiff attempts to provide specific reasons why he should be excused from exhausting administrative remedies with respect to each of his individual requests for injunctive relief, these lengthy filings are primarily a rambling recitation of facts and relief sought.

[14] Moreover, even if Plaintiff had exhausted administrative remedies, because Plaintiff is no longer incarcerated at FCI Williamsburg [*see* Doc. 52 (notice of change of address, indicating Plaintiff is now at FCI Coleman)], his claims are moot because he is seeking only injunctive and/or declaratory relief in this case. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends (1) Defendant's motion for summary judgment [Doc. 26] be GRANTED and (2) Plaintiff's motion for declaratory judgment [Doc. 30], motion for preliminary injunction [Doc. 43], motion to expedite ruling [Doc. 57], motion for authenticity validation check [Doc. 58], and motion to amend/correct the motion for preliminary injunction [Doc. 66] be FOUND AS MOOT.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 19, 2013
Greenville, South Carolina